## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| KRISTY HENDERSON,<br><br>        Plaintiff,<br><br>vs.<br><br>JOHN BONAVENTURA et al.,<br><br>        Defendants. | 2:13-cv-01921-RCJ-VCF<br><br>**ORDER** |

This case arises out of the termination of a Deputy Constable of the Las Vegas Township Constable's Office ("LVTCO"). Pending before the Court are Clark County's Motion to Dismiss (ECF No. 20) and the remaining Defendants' Motion to Dismiss or for Summary Judgment (ECF No. 23). For the reasons given herein, the Court grants Clark County's motion and grants the remaining Defendants' separate motion in part.

**I.     FACTS AND PROCEDURAL HISTORY**

Plaintiff Kristy Henderson was a Deputy Constable with LVTCOP for several years, having been appointed by Defendant Constable John Bonaventura's predecessor. (Compl. ¶ 8, Oct. 21, 2013, ECF No. 1). After Bonaventura was elected, Defendant Deputy Constable Lou Toomin directed Plaintiff to appear in a pilot episode of a reality television program about LVTCO, which she did. (*Id.* ¶ 9). Bonaventura soon began making sexual comments to Henderson on a regular basis, asking her to sit on his face and wear a miniskirt and garters to

work, telling her that her "hard body" made part of his body hard, and other vulgar and sexually harassing comments. (*Id.* ¶ 10).

In January 2012, members of the Clark County Board of Commissioners expressed their concern over the proposed reality show because it depicted several deputies using profanity and abusive language with members of the public, as well as other unprofessional and embarrassing behavior. (*Id.* ¶ 12). The Board held a hearing on January 3, 2012 at which they expressed displeasure with the idea of the show, and Deputy John Watkins, whom Bonaventura had sent to represent him, assured the Board that Bonaventura had no intention of moving forward with the show. (*Id.* ¶ 13).

In early 2012, Lt. Hadi Sadjadi (presumably also of the LVTCO, though not explicitly so alleged) questioned Plaintiff and her boyfriend, Deputy Ray Jacoby, about an incident involving Jacoby that had resulted in a citizens complaint against him. (*See id.* ¶¶ 14–15). Plaintiff did not receive forty-eight hours notice of the interview, and during the interview, Sadjadi did not inform Plaintiff of her rights under the "Peace Officer's Bill of Rights in Chapter 289 of the Nevada Revised Statutes ("NRS") or of her right to representation. (*Id.* ¶ 14). When Plaintiff complained of the alleged violations of Chapter 289, Lt. Sadjadi told her to speak to Bonaventura. (*See id.* ¶ 17). Deputy Chief Dean Lauer ultimately gave Plaintiff a verbal warning as a result of the incident. (*Id.* ¶ 16). When Plaintiff spoke with Bonaventura about the alleged Chapter 289 violations at her interview with Lt. Sadjadi, Bonaventura told her LTVCO "would not love her again" until she "dumped Ray [Jacoby]." (*Id.* ¶ 18). She was also told not to worry, because LTVCO needed its "female, its Jew, and its black." (*Id.* ¶ 18).[1]

In early July 2012, Toomin directed Plaintiff to write a biography for the reality show, because the producers wanted to feature her in the show. (*Id.* ¶ 19). Plaintiff expressed her

---

[1] Plaintiff does not directly allege here, or elsewhere in the Complaint, whether she is African-American and/or Jewish.

1   concerns because LVTCO had assured the Board that there would be no show after the Board
2   expressed its concerns, and Toomin told her it was a secret and that she should not tell anyone.
3   (*Id.*).  Plaintiff contacted County Commissioner Steve Sisolak to express her concerns but also
4   wrote the biography as instructed, telling her superiors she was only complying out of fear of
5   reprisal for non-compliance. (*Id.*).  Plaintiff then advised Bonaventura and Toomin that she
6   would not participate in the realty show. (*Id.* ¶ 20).  On July 13, 2012, Bonaventura terminated
7   Plaintiff. (*Id.*).

8       Plaintiff exhausted her administrative remedies with the Equal Employment Opportunity
9   Commission ("EEOC") and received a Right-to-Sue Letter ("RTS") on August 30, 2013. (*Id.*
10  ¶¶ 22–24).[2]  Plaintiff sued Bonaventura, Toomin, LVTCO (collectively "LTVCO Defendants"),
11  and Clark County in this Court less than ninety days later on October 21, 2013.  The Complaint
12  lists seven nominal causes of action: (1) Hostile Workplace Environment ("HWE") under Title
13  VII; (2) Sexual Harrassment (Quid Pro Quo) under Title VII; (3) Retaliation under Title VII; (4)
14  Breach of Contract; (5) Violations of Chapter 289 and the Due Process Clauses of the U.S. and
15  Nevada Constitutions; (6) Breach of the Implied Covenant of Good Faith and Fair Dealing (in
16  both contract and tort); and (7) Wrongful Discharge.  Clark County has moved to dismiss, and
17  LTVCO Defendants have moved to dismiss or, in the alternative, for summary judgment.

18  **II.    LEGAL STANDARDS**

19      **A.    Dismissal**

20      Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the
21  claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of
22  what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47
23  (1957).  Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action

---

[2] Plaintiff does not allege the nature of the charge of discrimination to the EEOC, but presumably it was for sex discrimination.

1  that fails to state a claim upon which relief can be granted.  A motion to dismiss under Rule
2  12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720
3  F.2d 578, 581 (9th Cir. 1983).  When considering a motion to dismiss under Rule 12(b)(6) for
4  failure to state a claim, dismissal is appropriate only when the complaint does not give the
5  defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell*
6  *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering whether the complaint is
7  sufficient to state a claim, the court will take all material allegations as true and construe them in
8  the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th
9  Cir. 1986).  The court, however, is not required to accept as true allegations that are merely
10 conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden*
11 *State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A formulaic recitation of a cause of action
12 with conclusory allegations is not sufficient; a plaintiff must plead facts pertaining to his own
13 case making a violation plausible, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79
14 (2009) (citing *Twombly*, 550 U.S. at 556) ("A claim has facial plausibility when the plaintiff
15 pleads factual content that allows the court to draw the reasonable inference that the defendant is
16 liable for the misconduct alleged.").  In other words, under the modern interpretation of Rule
17 8(a), a plaintiff must not only specify a cognizable legal theory (*Conley* review), but also must
18 plead the facts of his own case so that the court can determine whether the plaintiff has any
19 plausible basis for relief under the legal theory he has specified, assuming the facts are as he
20 alleges (*Twombly-Iqbal* review).
21      "Generally, a district court may not consider any material beyond the pleadings in ruling
22 on a Rule 12(b)(6) motion.  However, material which is properly submitted as part of the
23 complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner*
24 *& Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted).  Similarly, "documents
25 whose contents are alleged in a complaint and whose authenticity no party questions, but which

are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).  Moreover, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986).  Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

      **B.**     **Summary Judgment**

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  In determining summary judgment, a court uses a burden-shifting scheme:

> When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations and internal quotation marks omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an

element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III.   ANALYSIS**

    **A.   Clark County's Motion to Dismiss**

First, Clark County asks the Court to dismiss because it was not Plaintiff's "employer" under Title VII, Plaintiff was not an "employee" at all under Title VII, and there was otherwise no privity between Plaintiff and the County. Plaintiff's response was originally due on December

6, 2013. The parties stipulated to extend the deadline to December 20, 2013, but the Court has not as of this writing approved the extension, and in any case, Plaintiff still did not respond by that date. Plaintiff has therefore impliedly consented to the Court's granting the motion. *See* Local R. 7-2(d).

LTVCO Defendants have themselves opposed the motion, however. LTVCO Defendants argue that NRS section 41.0337 prevents dismissal of the County as a Defendant. The statute reads in relevant part:

> 1.  No tort action arising out of an act or omission within the scope of a person's public duties or employment may be brought against any present or former:
>
>    (a) Local judicial officer or state judicial officer;
>    (b) Officer or employee of the State or of any political subdivision;
>    (c) Immune contractor; or
>    (d) State Legislator,
>
> *unless the State or appropriate political subdivision is named a party defendant under NRS 41.031.*
>
> 2.  No tort action may be brought against a person who is named as a defendant in the action solely because of an alleged act or omission relating to the public duties or employment of any present or former:
>
>    (a) Local judicial officer or state judicial officer;
>    (b) Officer or employee of the State or of any political subdivision;
>    (c) Immune contractor; or
>    (d) State Legislator,
>
> *unless the State or appropriate political subdivision is named a party defendant under NRS 41.031.*

Nev. Rev. Stat. § 41.0337(1)–(2) (emphases added). LTVCO Defendants misread the statute. Even assuming for the sake of argument that constables and their deputies are officers or employees of a political subdivision of a state for the purposes of this statute, the County has indeed been named as a Defendant, and that is all the text of the statute requires. The statute does not appear to require the County to defend or indemnify the other parties. Nor does it

prevent a court from dismissing the County and permitting a plaintiff to proceed against other defendants.  The Court therefore grants the County's motion to dismiss.

### B. LVTCO Defendants' Motion to Dismiss or for Summary Judgment

Second, LTVCO Defendants ask the Court to dismiss or grant them defensive summary judgment on the merits and because of the existence of an earlier-filed case in state court asserting the same claims.

#### 1. Claim Splitting

A court should dismiss for improper claim-splitting any claims filed by the same party as affirmative claims in an earlier action and which would be precluded in the later case were there a final judgment on the merits on the claims in the earlier case. *See Adams v. Cal. Dep't. of Health Servs.*, 487 F.3d 684, 688–89 (9th Cir.2007).  On the other hand, a party defending a claim in an earlier-filed action may bring a similar affirmative claim in another court without violating the anti-claim-splitting rule.

The amended complaint in the state court action, No. A-13-682415-C in the Eighth Judicial District Court of Nevada (Clark County) lists seven nominal causes of action: (1) Violations of Chapter 289 and the Due Process Clauses of the U.S. and Nevada Constitutions; (2) Retaliatory Termination in Violation of the Free Speech and the Due Process Clauses of the U.S. and Nevada Constitutions; (3) Intentional Infliction of Emotional Distress; (4) Breach of Contract; (5) Breach of the Implied Covenant of Good Faith and Fair Dealing; (6) Negligent Supervision; and (7) Injunctive Relief.  The Court finds that the fourth, fifth, and sixth causes of action in the present Complaint are precluded in the present case due to the anti-claim-splitting doctrine, but the other claims are not.  Plaintiff may not press these three claims in two fora simultaneously, although she may indeed simultaneously press different claims in two fora that merely arise out of the same occurrence or transaction or series of occurrences or transactions. Plaintiff's claims here that are different from but related to the claims in the state court action are

not compulsory counterclaims in the state court action that she was required to bring there or lose them. Therefore, the first, second, third, and seventh claims of the Complaint must be addressed on the merits here as against LVTCO.

### 2. The Merits

LVTCO Defendants argue that the seventh cause of action for wrongful discharge fails because of the at-will employment doctrine. "Under Nevada law, the absence of a written contract gives rise to the presumption that employment is at will." *Brooks v. Hilton Casinos, Inc.*, 959 F.2d 757, 759 (9th Cir. 1992) (citing *Vancheri v. GNLV Corp.*, 777 P.2d 366, 368 (Nev. 1989)). At-will employment can be terminated without liability by either the employer or the employee at any time and for any reason or no reason, *Martin v. Sears–Roebuck & Co.*, 899 P.2d 551, 554 (Nev. 1995), with limited exceptions based on "strong public policy," see *Hansen v. Harrah's*, 675 P.2d 394, 396 (Nev. 1984) (holding that an at-will employee can bring an action for retaliatory discharge when fired in retaliation for filing a worker's compensation claim). Because Plaintiff has not alleged any written contract, the presumption of at-will employment applies.

An employer may be liable for tortious discharge in Nevada in the context of an at-will employment relationship only where it terminates an employee in a way repugnant to the "strong public policy" of the state. *Hansen*, 675 P.2d at 396. The Supreme Court of Nevada has noted that terminating an employee "for seeking industrial insurance benefits, for performing jury duty or for refusing to violate the law" are examples of violations of Nevada's "strong public policy." *See D'Angelo v. Gardner*, 819 P.2d 206, 212 (Nev. 1991). Not all terminations contrary to the express or implied public policy of the state, however, necessarily implicate the "strong public policy" exception to the at-will employment rule as defined by the Nevada Supreme Court, *see, e.g., Sands Regent v. Valgardson*, 777 P.2d 898, 899 (Nev. 1989) (ruling that age discrimination was not against the "strong public policy" of the state, despite the fact that the Nevada

Legislature had expressly announced a public policy against age discrimination), and firings for insubordination are not contrary to public policy at all, *Wayment v. Holmes*, 912 P.2d 816, 819 (Nev. 1996). Finally, termination with a mixed motivation will not support a wrongful discharge claim under Nevada law; the motivation must have been purely wrongful. *Allum v. Valley Bank of Nev.*, 970 P.2d 1062, 1066 (Nev. 1998).

Movants rest their argument on the failure to plead a written contract of employment. In response, Plaintiff implicitly concedes the at-will employment issue but argues that she has alleged termination in violation of the strong public policy of the State under *Hansen*, although the argument is conflated with an argument in support of the claim for retaliation under Title VII directly. Specifically, Plaintiff argues she was terminated because she filed a charge of discrimination with the EEOC. But precisely because there exists a statutory remedy for such retaliation, the Nevada Supreme Court would not likely accept such retaliation as an exception to the at-will employment rule. *See Valgardson*, 777 P.2d at 900. The same is true of the allegations that LVTCO Defendants forced Plaintiff to participate in the reality show of which the Board disapproved and that LVTCO violated her statutory rights in disciplinary interviews. Even assuming these constituted violations of law by LVTCO, it is difficult to see how LVTCO tried to force Plaintiff to violate any laws based upon the allegations, and the Court has already estimated that the Nevada Supreme Court would likely only recognize termination of an employee for the refusal to participate in serious felonies as sufficient to invoke an exception to the at-will employment doctrine. *See Andrews v. HCR Manor Care Med. Servs. of Fla., LLC*, No. 3:10-cv-624, 2011 WL 1303230, at *3 (D. Nev. Mar. 30, 2011) (Jones, J.), *aff'd*, 486 Fed. Appx. 691 (9th Cir. Nov. 9, 2012). Nor does Plaintiff's report to Commissioner Sisolak that LVTCO intended to continue with the reality show despite the Board's dissatisfaction with the show implicate an exception to the doctrine, because it was a voluntary report on an issue that,

although politically sensitive, was not a matter of workplace safety or insurance benefits or a refusal to permit an employee to perform jury duty.

Finally, LVTCO Defendants do not argue on the merits as against the first through third causes of action. Those claims therefore survive as against LVTCO.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss (ECF No. 20) is GRANTED. Clark County is dismissed as a Defendant.

IT IS FURTHER ORDERED that the Motion to Dismiss or for Summary Judgment (ECF No. 23) is GRANTED IN PART and DENIED IN PART. The fourth through seventh causes of action are dismissed as against LVTCO.

IT IS SO ORDERED.

Dated this 10th day of January, 2014.

_____
ROBERT C. JONES
United States District Judge